# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

KEDRICK BYRD

CIVIL ACTION

VERSUS

NO. 16-563-JWD-EWD

ALLSTATE PROPERTY AND
CASUALTY INSURANCE COMPANY
AND GARY F. NORMAN

## RULING ON PETITIONER'S MOTION TO DISQUALIFY OR LIMIT THE TESTIMONY OF DEFENDANTS' EXPERT WITNESS (DAUBERT MOTION)

Before the Court is a motion by plaintiff Kedrick Byrd ("Plaintiff" or "Byrd") to disqualify or limit the testimony of accident reconstruction expert Michael S. Gillen ("Gillen"), hired by defendants P&S Transportation LLC ("P&S") and Gary Norman ("Norman"), (collectively, "Defendants"). (Doc. 77.) It is opposed by Defendants. (Doc. 80.) Plaintiff filed a reply memorandum. (Doc. 81.) For the reasons which follow, Plaintiff's motion is denied.

## I. FACTUAL BACKGROUND

Plaintiff alleges that on August 7, 2015, he was driving a 2013 BMW 328 owned by his passenger Stacy Henry ("Henry")[1] in an easterly direction on Interstate Highway 10 in East Baton Rouge Parish, Louisiana. (Doc 77-1 at 1.) At the same time, Norman was driving a tractor-trailer rig on the same highway, in the same direction when, according to Plaintiff, Norman's tractor-trailer rear-ended the BMW. (*Id*., at 1-2.) Liability does not seem to be in serious dispute.[2] Trial is set for December 3, 2018.[3]

---

[1] At one time, Henry's claim arising from the same accident was consolidated with the present one. (Doc. 51.) However, Henry's case was severed and remanded to state court. (Doc. 67.)
[2] Defendants state that "The primary issue in this case is the extent of damages claimed for this very minor impact." (Doc. 45 at 1.)
[3] Doc. 49.

1

According to Defendant, and not disputed by Plaintiff, after the accident, the expert witness hired by Henry (Jeremy Hoffpauir) retrieved data from the BMW's Crash Data Retrieval (CDR) system (the vehicle's so-called "black box"). (Doc 80 at 5.) Defendants requested that their expert be allowed to retrieve the CDR data, but this request was refused by the vehicle's owner, Henry, through Henry's attorney. (Doc 80 at 6; *see also* the attached exhibit.)

Defendants' expert Gillen issued a report on January 25, 2018. (Doc. 77-2.) His opinions are based in part on the CDR data retrieved by Hoffpauir. Among other opinions rendered by Gillen, he concludes that Plaintiff was buckled in his seat belt and the BMW was stationary at the time of impact. (Doc. 77-1 at 2, citing Doc 77-2 at 7.) He opines that it was a very low impact accident with very little force transferred to the occupants of the BMW. (Doc. 77-2 at 8-10.)

## II.  PLAINTIFF'S ARGUMENT

Plaintiff concedes Gillen's expertise in the area of accident reconstruction. (Doc. 81 at 1.) Indeed, "[Plaintiff] does not object to his opinions as to how the accident happened" but rather, focuses his concern on Gillen's opinions regarding "the amount of force transferred in this accident." (Doc. 77-1 at 6.) As to this, Plaintiff makes five objections:

1. Gillen is not qualified to testify regarding G forces since "he does not possess the requisite [educational] degrees to testify about G forces in this matter." (Doc. 77-1 at 5.)
2. Gillen "refers to a book [The Physics Factbook] which presumably he read that discusses facts outside his expertise as an Accident Reconstructionist." (*Id*., at 3)
3. Gillen's opinions based on the CDR data are "not based on scientific and technical training" since "Gillen did not retrieve this information and has no knowledge of who Mr. Hoffpauir is or who attempted to read this information." (*Id.*, at 2.)

2

4. The CDR data is unreliable for various reasons. (Doc. 81 at 2-4.)

5. Gillen's opinion is directly contradicted by [Plaintiff] and the [police investigation]…" (Doc. 77-1 at 2.)

### III. DEFENDANTS' ARGUMENTS

Defendants respond that:

1. Gillen is highly qualified and a "well-known and respected Baton Rouge [accident reconstruction] expert…" and "…has never been excluded from testifying in any court." (Doc. 80 at 3.)

2. He and his company, National Collision Technologies, Inc. "provided a peer reviewed work product accomplished by a multidisciplinary group of trained team members. (*Id*., at 4.)

3. Gillen's opinion is based on "a two page list of records he reviewed prior to issuing his report, including data downloads, depositions, discovery responses, photographs and other related documents." (*Id*.)

4. Defendants were prevented from retrieving or even being present during the CDR download by Henry's attorney (*id*., at 6) but, in any event, it was done by Henry's expert, Jeremy Hoffpauir, "an engineer by education who practices as an accident reconstruction expert whose credentials are available online." (*Id*., at 5-6.)

5. Who performed the data retrieval is irrelevant as "the data does not change depending on who performs the download" and "an error or irregularity with the download would be indicated in the data report." (*Id*., at 6.)

6. Gillen's reliance on The Physics Factbook is justified and "Gillen references g-forces regularly in his accident reconstruction work." (*Id*., at 7.)

3

## IV. DISCUSSION

### A. *Standard*

Pursuant to Federal Rule of Evidence 702, "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if the rule's preconditions are met.

Plaintiff's motion is a *Daubert* challenge based principally on Gillen's alleged failure to have an adequate factual and scientific foundation for certain of his opinions. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). When *Daubert* is invoked, a district court may, but is not required to, hold a hearing at which the proffered opinion may be challenged. *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 201 (5th Cir. 2016). However, when no hearing is held, "a district court must still perform its gatekeeping function by performing some type of *Daubert* inquiry." *Id*. "At a minimum, a district court must create a record of its *Daubert* inquiry and 'articulate its basis for admitting expert testimony.'" *Id*. (quoting *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 581 (5th Cir. 2001)).

The role of the trial court is to serve as the gatekeeper for expert testimony by making the determination of whether the expert opinion is sufficiently reliable. As the Fifth Circuit has held:

> [W]hen expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case. *Daubert* went on to make "general observations" intended to guide a district court's evaluation of scientific evidence. The nonexclusive list includes "whether [a theory or technique] can be (and has been) tested," whether it "has been subjected to peer review and publication," the "known or potential rate of error," and the "existence and maintenance of standards controlling the technique's operation," as well as "general acceptance." The [Supreme] Court summarized:
>
> The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability-of the principles that underlie a proposed submission. The focus, of

course, must be solely on principles and methodology, not on the conclusions that they generate.

*Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997) (internal citations omitted).

Cases following *Daubert* have expanded upon these factors and explained that *Daubert*'s listing is neither all-encompassing nor is every factor required in every case. *See, e.g.*, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Indeed, courts may look to other factors. *Joiner*, 522 U.S. at 146.

As this Court has explained:

> The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, which provide that the court serves as a gatekeeper, ensuring all scientific testimony is relevant and reliable. This gatekeeping role extends to all expert testimony, whether scientific or not. Under Rule 702, the court must consider three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based.

*Fayard v. Tire Kingdom, Inc.*, 2010 WL 3999011 at *1 (M.D. La. Oct. 12, 2010) (internal citations omitted) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999)).

This Court has broad discretion in deciding whether to admit expert opinion testimony. *See, e.g.*, *Joiner*, 522 U.S. at 138-39 (appellate courts review a trial court's decision to admit or exclude expert testimony under *Daubert* under the abuse of discretion standard); *Watkins*, 121 F.3d at 988 ("District courts enjoy wide latitude in determining the admissibility of expert testimony."); *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998) ("Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence.").

"Notwithstanding *Daubert*, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.'" *Johnson v. Samsung Elecs. Am., Inc.*, 277 F.R.D.

161, 165 (E.D. La. 2011) (citing Fed. R. Evid. 702 Advisory Committee Note (2000 amend.)).

Further, as explained in *Scordill v. Louisville Ladder Grp., L.L.C.*:

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'"

2003 WL 22427981 at *3 (E.D. La. Oct. 24, 2003) (Vance, J.) (internal citations omitted) (relying on, among others, *Rock v. Arkansas*, 483 U.S. 44, 61 (1987), and *United States v. 14.38 Acres of Land, More or Less Sit. In Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996)).

The Supreme Court has recognized that not all expert opinion testimony can be measured by the same exact standard. Rather, the *Daubert* analysis is a "flexible" one, and "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho*, 526 U.S. at 150, *cited with approval in Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002).

### B. *Analysis*

Plaintiff's first two arguments are interrelated. While he does not question Gillen's expertise as an accident reconstructionist, he questions his qualifications to opine regarding G forces and the force of impact in the collision as well as his reliance upon a physics manual (specifically, The Physics Factbook) in reaching his conclusions. The Court finds that Plaintiff's arguments are without merit. First, it is a routine part of the work of an accident reconstruction expert to calculate speeds of vehicles and forces upon impact and to use physics in the

calculations and analysis of same. Plaintiff's assertion to the contrary is unsupported. The fact that Gillen does not have a degree in mathematics or physics is of no moment since expertise can be based on experience in a given field.

Federal Rule of Evidence 702 requires that an expert be properly qualified. Generally, if there is some reasonable indication of qualifications, the court may admit the expert's testimony and then leave to the jury the extent of those qualifications. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 506 (5th Cir. 1999), *superseded by statute on other grounds*. The Supreme Court in *Kumho Tire*, 526 U.S. at 148-149, 156, and *Daubert*, 509 U.S. at 592, endorsed expert testimony based on personal observation and experience.[4] Additionally, the 2000 Advisory Committee Notes to Rule 702 state, "the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience" which may be the "predominant, if not sole, basis for a great deal of reliable expert testimony."

If the expert's testimony does not rest on traditional scientific methods, the court may permit testimony "where a proposed expert witness bases her testimony on practical experience rather than scientific analysis." *Davis v. Carroll*, 937 F. Supp. 2d 390, 412 (S.D.N.Y. 2013). "In such cases . . . courts recognize that experts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called 'general truths derived from . . . specialized experience.'" *Id*. at 412 (quoting *Kumho Tire*, 526 U.S. at 149–50); *see also Maiz v. Virani*, 253 F.3d 641, 669 (11th Cir. 2001). ("[T]here is no question that an expert may still properly base his testimony on 'professional study or *personal experience*.'" (emphasis added)); *Watson v. Snap-On Tools, Inc.*, 2006 WL 2114558 at *5 (W.D. La. July 26, 2006).

---

[4] *See also, LeBlanc v. Chevron USA, Inc*., 396 F. App'x. 94, 100 (5th Cir. 2010) (per curiam) (unpublished).

Furthermore, it is common for experts to rely on outside sources of information such as, in this case "The Physics Factbook." Here, Plaintiff does not challenge the authoritative nature of the information contained therein but merely Gillen's use of it. The Court rejects this argument.

With respect to the Gillen's use of the CDR data, Plaintiff mounts two attacks: first, because Gillen did not extract the data himself, he should not be permitted to rely on it and, second, the CDR data itself is unreliable. As to the first, it is common and acceptable for experts to rely on data developed by others, if it is of a kind ordinarily used by experts in that field. *See* Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that *the expert has been made aware of* or personally observed." (emphasis added)); *Daubert*, 509 U.S. at 592 ("Unlike an ordinary witness, . . . an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." (citing Fed. R. Evid. 702, 703)); *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1432 (5th Cir. 1989) (rejecting argument that doctor/toxicologist's opinion lacked adequate basis for not personally examining decedent because "A personal examination of the person or object of the expert's testimony is not required under Fed. R. Evid. 703" (citations omitted), and taking judicial notice that "the facts relied on by [doctor/toxicologist] [were] those usually considered by medical experts"); *Tajonera v. Black Elk Energy Offshore Operations, L.L.C.*, 2016 WL 3180776, at *10 & n. 142 (E.D. La. June 7, 2016) ("Federal Rule of Evidence 703 allows experts to base their opinions on facts or data that the expert has been made aware of or personally observed, which includes the efforts of other experts, provided that 'experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject.' " (citations omitted)).[5]

---

[5] *See also* Fed. R. Evid. 703, Notes of Advisory Committee on Proposed Rules ("The third source contemplated by the rule consists of presentation of data to the expert outside of court and other than by his own perception. In this respect the rule is designed to broaden the basis for expert opinions beyond that current in many jurisdictions and to bring the judicial practice into line with the practice of the experts themselves when not in court. Thus a physician in

8

Furthermore, Defendants argue that they were denied a request to extract the CDR data themselves or even be present when it was done, a charge not challenged by Plaintiff. Defendants also assert that Jeremy Hoffpauire, who did retrieve the data, was the expert hired by a co-claimant and is a qualified engineer. This too is unrefuted by Plaintiff.

Second, as to the supposed unreliability of the CDR data, Plaintiff's attack is not supported by anything other than Plaintiff's arguments. Furthermore, and more fundamentally, "[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land More Or Less Situated in Lefore County, Miss.*, 80 F.3d at 1077 (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)); *see also Imperial Trading Co. v. Travelers Property Cas. Co. of America*, 2009 WL 2356292 at *3 (E.D. La. July 28, 2009). Furthermore, "[m]atters left for the jury's consideration include the alleged miscalculations, erroneous assumptions, and inconsistencies that plaintiffs object to." *Imperial Trading*, 2009 WL 2356292 at *3 (*citing Southwire Co. v. J.P. Morgan Chase & Co.*, 258 F. Supp. 2d 908, 935 (W.D. Wis. 2007)).

Plaintiff's final argument is that Gillen should be prevented from testifying because his conclusions conflict with Plaintiff's testimony and the police report. This, needless to say, is not a valid ground for excluding otherwise appropriate expert testimony. The nature of any trial is that accounts will vary and conflict, and it is the duty of the jury, not the Court, to resolve these conflicts. For all of these reasons, Plaintiff's motion is denied.

---

his own practice bases his diagnosis on information from numerous sources and of considerable variety, including statements by patients and relatives, reports and opinions from nurses, technicians and other doctors, hospital records, and X rays.").

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** that *Petitioner's Motion to Disqualify, Exclude and/or Limit the Testimony of Defendant's Expert Witness (Daubert Motion)* filed by Kedrick Byrd (Doc. 77) is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>October 1, 2018</u>.

———————————————
**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**